UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY** | * | **CIVIL ACTION NO: 2:23-cv-03258** |
| | * | |
| | * | **JUDGE: WENDY B. VITTER** |
| **VERSUS** | * | |
| | * | |
| **ROYAL WHITE CEMENT, INC.** | * | **MAG. JUDGE: DONNA P. CURRAULT** |

*****************************************************************

## OPPOSITION TO ROYAL WHITE CEMENT, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Liberty Mutual Insurance Company ("Liberty"), respectfully submits this Opposition to the Motion for Partial Summary Judgment filed by Defendant, Royal White Cement, Inc. ("Royal White"). The Motion should be denied because the insurance policy at issue [Rec. Docs. 16.1, 16.2, and 16.3] does not provide coverage for the demurrage charges incurred by Royal White, pursuant to the plain and unambiguous language of the policy.

### I.   Relevant Factual Background

The basic facts for the purpose of the Motion are not in dispute. Royal White chartered a vessel for the transportation of bags of cement. The cement—i.e., cargo—was transported in bulk in the hold of the vessel, rather than in containers. Some of the cargo was damaged during transit and spilled throughout the hold of the vessel, which required extensive cleaning. Royal White incurred demurrage charges as a result of the delay caused from cleaning the spilled cargo from the vessel. See Rec. Doc. 20-2, page 2. Liberty paid Royal White nearly $850,000 for the damaged and destroyed cargo, as well as the cleaning, pursuant to its cargo insurance policy. Liberty denied Royal White's claim for demurrage on the basis that the policy does not provide coverage for the demurrage incurred by Royal White.

Liberty issued a Marine Cargo Policy bearing policy number HOOMC10959305 to Royal White, with a policy period of February 7, 2022 to February 7, 2023. The policy repeatedly,

1

clearly, and unambiguously excludes insuring risks arising from delays, such as demurrage charges. Even though the plain and unambiguous language of the policy excludes coverage for expenses arising from delays, Royal White seeks to expand demurrage coverage to any and all instances. Such an interpretation of the policy would erroneously expand coverage to include risks that are expressly excluded from the policy and render numerous clauses in the policy meaningless.

## II.     The Policy Repeatedly Excludes Coverage for Expenses Arising from Delays

The policy's coverage is subject to terms, conditions, and warranties. One such warranty may be found at Section 1 Clause 40 entitled "Delay and Inherent Vice" which reads in full as follows:

> 40. DELAY AND INHERENT VICE
>
> This policy is warranted free from claims for loss of market or loss, damage, deterioration, and expense arising from delay, whether caused by a peril insured against or otherwise, including from inherent vices (or nature) of the insured good(s) itself.

See Rec. Doc. 16.1, page 20. This warranty plainly and unambiguously specifies that the policy does not provide coverage for expenses arising from delays whether caused by perils insured against or otherwise.

The policy's express exclusion of coverage for expenses arising from delays is reiterated at Section 1 Clause 15 entitled "Warehouse to Warehouse and Marine Extension Clause" which reads as follows:

> (f) This insurance shall in no case be deemed to extend to cover loss, damage or expense proximately caused by delay or inherent vice or nature of the subject matter insured.

See Rec. Doc. 16-1, pages 11-12.

Again, this exclusion is reiterated in the endorsement entitled "Strikes, Riots & Civil Commotions (Form 12)", as follows:

> Nothing in this endorsement shall be construed to cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:
>
> [...]
>
> (c) loss of market or loss, damage or deterioration arising from delay;

See Rec. Doc. 16-1, page 31.

And it is restated again in the endorsement entitled "Section 1 War Risk Policy", as follows:

> 3. This insurance does not cover any loss, damage or expense directly or indirectly arising from, contributed to, or caused by any of the following, whether due to a peril insured against or otherwise:
>
> [...]
>
> (c) Delay, deterioration and/or loss of market.

See Rec. Doc. 16-1, page 39.

It is undisputed that the demurrage expenses incurred by Royal White were caused by the delay in cleaning spilled cargo from the vessel's hold. See Rec. Doc. 20-2, page 2. The policy repeatedly, clearly, and unambiguously excludes claims for expenses arising from delays, such as demurrage charges. Any contrary interpretation of the numerous clauses and warrantees in the policy would erroneously expand coverage to include risks that are expressly excluded from the policy and would render the numerous clauses and warrantees in the policy meaningless.

### III. The Limited Expansion of Coverage for Demurrage Charges Does Not Apply

Subject to the foregoing express warranties and exclusions of coverage for expenses arising from delays, the policy provides a specific expansion of coverage regarding demurrage

charges in one limited circumstance. This extension of coverage may be found at Section 1 Clause 52 entitled "Demurrage" and reads in full as follows:

> 52. DEMURRAGE
>
> This policy shall cover demurrage charges and/or late penalties assessed against and paid by The Insured for late return of containers when said containers are retained by The Insured at the instruction of The Company for inspection by The Company's surveyor in investigation of loss or damage recoverable under this policy.
>
> The time period for which The Company shall be liable for said charges and/or penalties shall begin at the time The Company's instructs The Insured to retain the containers for inspection and end at the time The Company's surveyor instructs The Insured to return the containers.

See Rec. Doc. 16-1, page 23.

This clause expands the policy to include demurrage charges incurred for the late return of containers. This clause bears the only specific reference to "demurrage" in the entire policy and constitutes the exhaustive list of demurrage charges that are covered under the policy. The purpose of this expanded coverage is based in equity and common sense. Liberty is responsible for demurrage for the late return of containers when Liberty instructs its insured to retain the containers for inspection. In that circumstance, the policy provides coverage for demurrage, because Liberty is the party responsible for the delay. Here, it is undisputed that the Royal White's cargo was shipped in bulk, not containers. As such, the specific expansion of coverage for demurrage charges does not apply to the demurrage charges incurred by Royal White, because the demurrage charges were not for delay in returning containers to their owner. Indeed, it is undisputed that the demurrage charges were incurred due to delay in cleaning the vessel's hold. See Rec. Doc. 20-2, page 2. Consequently, the policy does not provide coverage for Royal White's demurrage claim.

**IV. The "Sue and Labor" Clause Cannot Be Used to Expand Coverage Under the Policy**

The "Sue and Labor" clause in the policy has no bearing on the demurrage claim asserted by Royal White. As referenced by Royal White in its memorandum, the Fifth Circuit has long held that the purpose of Sue and Labor clauses is "to reimburse the assured for these expenditures which are made primarily for the benefit of the underwriter either to reduce or eliminate a covered loss altogether." *Reliance Ins. Co. v. The Escapade*, 280 F.2d 482, 489 (5th Cir.1960). However, reimbursement to the insured is only available when the expenses incurred were for the purpose of avoiding or minimizing a loss for which the insurer would have been liable. See *Collins v. A.B.C. Marine Towing, L.L.C.*, CIV.A. 14-1900, 2015 WL 5797793, at *5 (E.D. La. Oct. 2, 2015) ("However, the expenses must have been incurred for the purpose of avoiding or minimizing a loss for which the insurer would have been liable."), citing *Reliance*, 280 F.2d at 489. "In other words, if there is no coverage under a hull policy, the insurer is under no contractual obligation to repay the sue and labor expenses." *Id.* Likewise, "it is also well-settled that 'the sue and labor clause does not operate as an enlargement of the perils underwritten against it.'" *Id.* at *7, quoting *Continental Food Prods., Inc. v. Ins. Co. of North America*, 554 F.2d 834, 837 (5th Cir.1977).

Here, Royal White's responsibility under the Sue and Labor clause is to protect Liberty's interest in a covered loss. As established above, Royal White's demurrage charges are not a covered loss under the plain and unambiguous terms of the policy. The policy does not provide coverage for expenses arising from delays, regardless of whether the delay is caused by an insured peril or otherwise. Because the demurrage charges incurred by Royal White were a result of the delays in cleaning the cargo hold of the vessel, Liberty was never liable for the demurrage charges incurred by Royal White. Any expense Royal White incurs as a result of the demurrage charges would not be for the purpose of avoiding or minimizing a loss for which Liberty would be liable.

The Sue and Labor clause in the Liberty policy "does not operate as an enlargement of the perils underwritten against it." See *Collins*, 2015 WL 5797793, at *7. As such, Royal White's reliance on the Sue and Labor clause fails.

The cases relied upon by Royal White in support of the effects of the Sue and Labor clause are distinguishable and unpersuasive. First, the court in *Ingersoll* did not address demurrage and specifically held that the Sue and Labor clause is "principally invoked to obtain reimbursement for those expenses incurred in an effort to mitigate damages, and has no application to plaintiff's litigation and attorneys' fees claims here." *Ingersoll Mill. Mach. Co. v. M/V Bodena*, 619 F.Supp. 493, 507 (S.D.N.Y.1985). The court did not discuss or analyze any clauses, warranties, or exclusions that may affect demurrage claims under the policy. Likewise, it is unclear how the court's award of $90,670 in interest for the delay in plaintiff receiving payment has any relevance to Royal White's claims herein. For these reasons, Royal White's reliance on *Ingersoll* is unpersuasive.

In *Armada*, the court awarded the plaintiff various sue and labor expenses, including an unspecified amount for demurrage charges incurred. *Armada Supply Inc. v. Wright*, 858 F.2d 842, 853 (2d Cir.1988). Of note, the parties did not dispute whether the policy covered demurrage; rather, the dispute centered on the various amounts of sue and labor expenses allowed and disallowed. *Id.* The court did not discuss or analyze any clauses, warranties, or exclusions that may affect demurrage claims under the policy. However, the court reiterated the same general principal that sue and labor expenses are available when the expenses incurred were for the purpose of avoiding or minimizing a loss for which the insurer would have been liable. The court maintained that "Sue and labor expenses are those reasonable costs borne by the assured to mitigate the loss and thus **reduce the amount to be paid by the underwriter**." *Armada*, 858 F.2d at 853

(emphasis added). Here, Liberty is not liable for demurrage pursuant to the plain and unambiguous language of the policy. As a general rule, plain or unambiguous language will be given its ordinary meaning and effect. See *Ingersoll*, 829 F.2d, 306, citing *Simmons Refining Co. v. Royal-Globe Ins. Co.*, 543 F.2d 1195, 1197 (7th Cir.1976). Likewise, courts may not create an ambiguity where none exists. See Simmons, 543 F.2d at 1197. As such, *Armada* is distinguishable from the case at bar.

In *AGCS Marine Ins. Co. v. World Fuel Servs., Inc.*, 220 F.Supp.3d 431, 440 (S.D.N.Y.2016), the insurer argued that it was not liable for demurrage charges because the policy only covered representing "physical loss or damage." The court rejected that argument, because the policy covers other items such as "sue and labor" expenses and "extra expenses incurred by the Assured forwarding tile good," as well as additional coverage over the invoice price and "prepaid and/or guaranteed and/or advanced freight," none of which constitutes "physical damage." *Id.*

Here, Liberty does not allege that the policy only provides coverage for "physical loss or damage." Indeed, it is Liberty's position that the policy expressly provides coverage for losses which do not involve "physical loss or damage," including Demurrage and "Sue and Labor" expenses. However, as discussed above, the Liberty policy provides certain exclusions and limitations to the coverage for these items—namely, demurrage is limited to charges incurred for the late return of containers and "Sue and Labor" only applies to losses for which the Liberty would have been liable. The demurrage incurred by Royal White was not for the late return of containers and, as such, the "Sue and Labor" clause does not apply to the demurrage expenses since Liberty is not liable for such expenses under the policy. Therefore, *AGCS Marine* is distinguishable from the case at bar.

## V. Conclusion

Royal White incurred demurrage charges as a result of the delay caused from cleaning the spilled cargo from the vessel. However, the Liberty policy repeatedly, clearly, and unambiguously excludes claims for expenses arising from delays, such as demurrage. As such, the Liberty policy does not provide coverage for the demurrage charges incurred by Royal White. For these reasons and the reasons stated above, Royal White's Motion must be denied.

Respectfully submitted:

MAHTOOK & LAFLEUR, LLC

*/s/ Robert A. Mahtook, Jr.*
ROBERT A. MAHTOOK, JR., #17034
KAY A. THEUNISSEN #17448
KALISTE JOSEPH SALOOM IV #35996
600 Jefferson Street, Suite 1000 (70501)
Post Office Box 3089
Lafayette, Louisiana 70502-3089
TEL:  (337) 266-2189
FAX:  (337) 266-2303
EMAIL: rmahtook@mandllaw.com
EMAIL: ktheunissen@mandllaw.com
EMAIL: jsaloom@mandllaw.com

Counsel for Plaintiff and Counter-Claim Defendant, Liberty Mutual Insurance Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has this day been served on all known counsel of record in this proceeding by:

( ) Hand Delivery          ( ) Prepaid U.S. Mail

( ) Facsimile              ( ) Federal Express

( ) Electronic Mail        ( X ) CM/ECF Court Filing System

Lafayette, Louisiana, this 4th day of December, 2023.

_____
ROBERT A. MAHTOOK, JR.
KALISTE JOSEPH SALOOM IV